## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| WALLACE PUGH, | ) | CASE NO. 1:10-cv-1648 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| EDWARD A. SHELDON, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Wallace Pugh ("Pugh"), represented by counsel, challenges the

constitutionality of his conviction in the case of *State v. Pugh*, Cuyahoga County Court of

Common Pleas Case No. CR 97-358233-ZA.  He filed a petition for a Writ of Habeas Corpus

(ECF No. 1) pursuant to 28 U.S.C. § 2254 on July 28, 2010.  On November 5, 2010, Warden

Edward A. Sheldon ("Respondent") filed a Motion to Dismiss the petition as time barred.  (ECF

No. 6.)  Pugh filed a Memorandum in Opposition on December 2, 2010.  (ECF No. 7.)  For

reasons set forth in detail below, it is recommended that Pugh's petition be DISMISSED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts "shall be presumed to be correct."

28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate

court summarized the facts underlying Pugh's conviction and addressed his assignments of error

as follows:

[*P2]  In December 1997, Pugh was charged with seven counts of rape and seven counts of gross sexual imposition.  The charges involved his daughter, N.P., who was under 13 years of age at the time the incidents occurred.  Pursuant to a plea agreement, he pled guilty to four counts of rape.  All remaining charges, including the sexually violent predator specifications, were dismissed.  In June 1998, the trial court sentenced him to an agreed sentence of 15 years in prison and classified him as a sexual predator.

[*P3]  Since then, Pugh has pursued multiple attacks on his guilty plea, including a motion to withdraw his guilty plea, a petition for postconviction relief, two motions for relief from judgment, and a second motion to withdraw his guilty plea.  He filed his second motion to withdraw his guilty plea in November 2008, more than ten years after he entered his plea. Pugh argued that newly discovered evidence demonstrates that the allegations against him were false. He included affidavits from N.P. and his ex-wife, Laura Pugh ("Laura").  Laura stated that she was never aware of any sexual activity between their daughter, N.P., and Pugh and that she allowed her feelings about the sexual abuse she experienced by her father to convince her that the same abuse had occurred between Pugh and N.P.  She also stated that she allowed police to believe that an old diary she wrote about her father's abuse was written about the abuse between Pugh and N.P.

[*P4]  N.P. stated in her affidavit that she was 13 years old at the time Pugh was arrested. She claimed that Pugh never abused her or had sex with her.  The trial court denied Pugh's second motion in December 2008.

[*P5]  Pugh now appeals, raising two assignments of error for our review.  In the first assignment of error, he argues that the trial court abused its discretion by denying his second motion to withdraw his guilty plea without conducting an evidentiary hearing.  In the second assignment of error, he argues that the trial court abused its discretion in failing to find a manifest injustice when newly discovered evidence demonstrates that he is innocent.  We will discuss these assignments of error together, as they both involve the same facts and standard of review.

[*P6]  Crim.R. 32.1 governs the withdrawal of guilty pleas, and provides that: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

[*P7]  A defendant moving for a post-sentence withdrawal of a guilty plea has the burden of establishing the existence of manifest injustice. *State v. Smith* (1977),

49 Ohio St.2d 261, 361 N.E.2d 1324, paragraph one of the syllabus. This court has stated that: "[a] manifest injustice is defined as a 'clear or openly unjust act[;]' * * * 'an extraordinary and fundamental flaw in the plea proceeding.' * * * '[M]anifest injustice' comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her." *State v. Sneed*, Cuyahoga App. No. 80902, 2002 Ohio 6502.

\*\*\*

[*P9]  Pugh essentially argues that, in light of the newly discovered evidence he supplied, the trial court's decision to deny his second motion to withdraw his guilty plea without a hearing constituted an abuse of discretion.  He claims that the new evidence demonstrates a manifest injustice because he is innocent and his plea was involuntary.

[*P10]  However, Pugh cannot now claim his innocence, because "[a] plea of guilty is a complete admission of guilt."  *State v. Stumpf* (1987), 32 Ohio St. 3d 95, 104, 512 N.E.2d 598; Crim.R. 11(B)(1).  *See, also, State v. Woodley*, Cuyahoga App. No. 83104, 2005 Ohio 4810, P13.  "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime."  *State v. Gaston*, Cuyahoga App. No. 92242, 2009 Ohio 3080, quoting *State v. Kitzler*, Wyandot App. No. 16-02-06, 2002 Ohio 5253, P12.  Therefore, "'[a] criminal defendant who pleads guilty is limited on appeal; he may only attack the voluntary, knowing, and intelligent nature of the plea * * *.'" *Gaston*, quoting *State v. Spates*, 64 Ohio St.3d 269, 272, 1992 Ohio 130, 595 N.E.2d 351.

\*\*\*

[*P12]  Pugh does not argue that the trial court failed to properly apprise him of the constitutional implications of his guilty pleas pursuant to Crim.R. 11.  Rather, he claims that his guilty plea was involuntary because defense counsel was ineffective for leading him to believe that N.P. was going to testify against him at trial, even though he was innocent.

[*P13]  We note that with respect to nonconstitutional notifications, a guilty plea will be considered knowing, intelligent, and voluntary if, before accepting the plea, the trial court, at the very least, substantially complied with the procedures set forth in Crim.R. 11.  *State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474.  "Substantial compliance means that, under the totality of the circumstances, the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id*.

-3-

[*P14]  In the instant case, a review of the record reveals that the trial court informed Pugh of his constitutional rights, the charged offenses, the maximum penalties involved, and that he would be subject to postrelease control for a period of five years following his release from prison.  Pugh stated that he understood the rights he was waiving and that he was satisfied with defense counsel's representation.  When asked by the trial court how he pled to each charge, he stated "guilty."  The court also asked him if was "in fact guilty of [the] offenses * * *" and Pugh responded, "Yes, ma'am."

[*P15]  Furthermore, Pugh raised the same arguments of his claimed innocence and ineffectiveness of counsel in his first motion to withdraw his guilty plea.  In denying this motion, the trial court noted that Pugh retained counsel of his choice, and at the plea hearing, made no assertions of confusion nor any promise or threat being made.

***

[*P18]  Moreover, a post-sentence motion to withdraw a guilty plea is subject to denial without a hearing "when the record indicates that the movant is not entitled to relief and the movant has failed to submit evidentiary documents sufficient to demonstrate a manifest injustice." (Citations omitted.) *State v. Russ*, Cuyahoga App. No. 81580, 2003 Ohio 1001; *see, also, State v. Markupson*, Cuyahoga App. No. 89013, 2007 Ohio 5329.  A trial court may, in the exercise of its discretion, judge the credibility of affidavits in determining whether to accept the affidavits as true statements of fact.  *State v. Mays*, 174 Ohio App.3d 681, 2008 Ohio 128, P14, 884 N.E.2d 607, citing *State v. Robinson*, 11th Dist. No. 2003-A-0125, 2005 Ohio 5287, at P28.

[*P19]  In the instant case, Pugh claims that the manifest injustice occurred when he pled guilty in the face of false testimony and his "new evidence" demonstrates that the allegations against him were false.  His daughter's statement, however, is not "new evidence."  She claims he never abused her, and she had no knowledge why he went to prison.  Moreover, the affidavits on which he relies, are sworn by interested parties--himself, his ex-wife, and his daughter.  Thus, the trial court could properly find these affidavits lacked sufficient credibility to require a hearing because of the nature of the evidence provided in these affidavits and the relationship between the affiants and Pugh.  In addition, "[w]hen a petitioner submits a claim that his guilty plea was involuntary, a 'record reflecting compliance with Crim.R. 11 has greater probative value' than a petitioner's self-serving affidavit."  *Yearby*, quoting *State v. Brehm* (July 18, 1997), Seneca App. No. 13-97-05, 1997 Ohio App. LEXIS 3125.

-4-

[*P20]  Therefore, we find that the court did not abuse its discretion by denying
Pugh's second motion to withdraw his guilty plea without a hearing.

*State v. Pugh*, 2009 Ohio App. LEXIS 3687, 2009-Ohio-4374 at ¶¶2-20 (Ohio Ct. App., Aug. 27,

2009) (footnotes omitted).

## II.  Procedural History

### A.   Conviction

On December 23, 1997, the Cuyahoga County Grand Jury charged Pugh with seven

counts of rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02, and seven counts of

gross sexual imposition in violation of O.R.C. § 2907.05.  (ECF No. 6-1, Exh. 1, Case No. CR-

358233.)  All of these charges carried sexually violent predator specifications.  *Id.*  Initially, on

January 7, 1998, Pugh, represented by counsel, plead "not guilty."  (ECF No. 6-1, Exh. 2.)

On February 17, 1998, the Cuyahoga County Grand Jury, in a second indictment, also

charged Pugh with thirty-five counts of Illegal Use of Minor in Nudity-Oriented Material in

violation of O.R.C. § 2907.323, and sixty counts of Pandering Obscenity Involving a Minor in

violation of O.R.C. § 2907.321.  (ECF No. 6-1, Exh. 3, Case No. CR-359898.)  He also initially

plead "not guilty" to these charges.

On June 10, 1998, counts four through seven, all rape charges, were amended by deleting

the force language and the sexually violent predator specifications.[1]  (ECF No. 6-1, Exh. 5.)

Thereafter, Pugh entered a plea of guilty to the four amended rape charges; the remaining counts

were nolled.  *Id.*  On the same date, Pugh was sentenced to an aggregate prison term of fifteen

years.  *Id.*  Furthermore, with respect to the charges in the second indictment, Pugh plead guilty

---

[1]  The dates on all counts in the indictment were amended to read July 1, 1996 to July 1,
1997.  (ECF No. 6-1, Exh. 5.)

-5-

to twelve counts of Illegal Use of a Minor in Nudity Oriented Materials and twenty-seven counts of Pandering Obscenity Involving a Minor.  (ECF No. 6-1, Exhs. 4 & 6.)  Pugh was sentenced to an aggregate prison term of ten years to be served consecutively to his fifteen year prison term.  *Id*.  He was also adjudicated to be a sexual predator.[2]  (ECF No. 6-1, Exh. 7.)

**B.    Direct Appeal**

Pugh did not file a direct appeal after his plea and sentence.

**C.    First Motion to Withdraw Guilty Plea**

On August 18, 1999, Pugh, *pro se*, filed motions to withdraw his guilty pleas in both cases.  (ECF No. 6-1, Exh. 8.)  He argued that his guilty plea to the rape charges was not knowing or voluntary, as he was "confused" about the "force" or "threat of force" provisions of O.R.C. § 2907.02(A)(1)(a) and the length of sentence he would be required to serve.  *Id*.

On August 26, 1999, the trial court denied Pugh's motion to withdraw his plea, explaining as follows:

> [T]his court fully reviewed Defendant's trial and constitutional rights before accepting any plea from him.  This court further informed Mr. Pugh that if, during the court [sic] of the plea discussions, anything that was confusing to him, if he failed to understand, or if he disagreed, then he could stop the proceeding by making his indications known to the court and any questions he had would be addressed by the court or counsel until Mr. Pugh was satisfied.  Mr. Pugh did not make any assertions of confusion; as a matter of fact, he proceeded.
>
> Additionally, while reviewing Mr. Pugh's trial and constitutional rights, the court inquired of Mr. Pugh as to whether or not any promises or threats had been made other than what was spread upon the record, and Mr. Pugh answered "no."  And finally, this court asked Mr. Pugh to tell the court what his plea was, and he stated

---

[2]  Curiously, Pugh's petition makes no mention of these other convictions, nor does it contain any argument as to how his "new evidence" has any bearing on these convictions.  Thus, it is unclear whether Pugh is challenging the constitutionality of those guilty pleas as well.

-6-

> "guilty," and the court went further by inquiring whether or not he was in fact
> guilty, and Mr. Pugh volunteered that he was in fact guilty of these crimes. The
> court then accepted his plea as [a] voluntary, willing plea.

(ECF No. 6-1, Exh. 9.)

On March 16, 2000, Pugh, *pro se*, filed a notice of delayed appeal with the Court of

Appeals for the Eighth Appellate District ("state appellate court"). (ECF No. 6-1, Exh. 10.) On

March 31, 2000, the appeal was dismissed *sua sponte*. (ECF No. 6-1, Exh. 11.)

On May 19, 2000, Pugh, *pro se*, filed an untimely Notice of Appeal with the Supreme

Court of Ohio, followed by a Motion for Delayed Appeal. (ECF No. 6-1, Exhs. 12 & 13.) On

November 22, 2000, the Supreme Court of Ohio denied the motion for leave to file a delayed

appeal.

**D.    Postconviction Relief and Delayed Appeal**

On August 1, 2000, Pugh filed a petition for post-conviction relief pursuant to O.R.C. §

2953.23(A)(1)(a)(2) alleging the existence of newly discovered evidence demonstrating that his

counsel was ineffective and that his guilty plea was involuntary. (ECF No. 6-1, Exh. 15.)

Though Pugh argued he was actually innocent, his petition was not based on the statements of

his daughter or ex-wife. *Id.* On October 19, 2004, four years later, the trial court denied Pugh's

petition. (ECF No. 6-1, Exh. 19.) Thereafter, on February 28, 2005, the trial court issued

Findings of Fact and Conclusions of Law, wherein it stated that Pugh's petition was untimely.

(ECF No. 6-1, Exh. 20.) The court further found that the alleged "newly discovered evidence"

was neither new nor exculpatory, and that the issues raised by Pugh were barred from its

consideration by the doctrine of *res judicata*. *Id.*

On May 9, 2005, Pugh filed a motion to vacate the February 28, 2005 judgment pursuant

-7-

to Ohio Civil Rule 60(b).  (ECF No. 6-1, Exh. 21.)  The motion was denied on May 13, 2005.
(ECF No. 6-1, Exh. 22.)

On January 4, 2006, Pugh filed a motion for relief from judgment asserting that he did not
receive notice of the court's judgment until December 12, 2005.  (ECF No. 6-1, Exh. 23.)
Respondent contends that this latter motion was apparently never ruled upon.  (ECF No. 6 at 5,
*citing* Exh. 51.)

In the interim, on August 22, 2003, Pugh, *pro se*, filed a notice of delayed appeal pursuant
to Ohio Appellate Rule 5(A) with respect to both of his cases, as well as a motion for leave to
file a delayed appeal.  (ECF No. 6, Exhs. 25 & 26.)  On September 24, 2003, the state appellate
court, after denying Pugh's motion for leave, dismissed the appeal *sua sponte*.  (ECF No. 6-3,
Exhs. 27 & 28.)  An application for reconsideration filed on October 1, 2003, was denied the
next day.  (ECF No. 6-3, Exhs. 29 & 30.)

On October 1, 2003, Pugh filed a second motion for leave to file a delayed appeal that
was also denied.  (ECF No. 6-3, Exhs. 31 & 32.)

On November 5, 2003, Pugh filed a Notice of Appeal with the Supreme Court of Ohio
(ECF No. 6-3, Exh. 35) followed by a motion for leave to file a delayed appeal.  (ECF No. 6-3,
Exh. 36.)  On March 24, 2004, Pugh's motion was denied and his appeal dismissed.  (ECF No.
6-3, Exh. 37.)

**E.     Second Motion to Withdraw Guilty Plea**

On November 6, 2008, Pugh, represented by counsel, filed a second motion to withdraw
his guilty plea.  (ECF No. 6-3, Exh. 38.)  Pugh argued that newly obtained evidence (*i.e.*
notarized statements/affidavits of his former spouse, daughter [the victim], and son) establishes

-8-

that he is actually innocent; and, that his guilty pleas, therefore, were not entered voluntarily.  *Id.*

Pugh's motion was denied without hearing or opinion on December 4, 2008.  (ECF No. 6-3, Exh.

39.)

On January 5, 2009, Pugh, represented by counsel, filed a timely Notice of Appeal

alleging the following assignments of error:

1. The trial court abused its discretion in summarily denying Mr. Pugh's Rule 32.1 motion without an evidentiary hearing.

2. The trial court abused its discretion in failing to find manifest injustice in light of the record demonstrating Mr. Pugh's innocence.

(ECF No. 6-3, Exh. 41.)

On August 27, 2009, both assignments of error were overruled and the judgment of the trial

court was affirmed.  *Pugh*, 2009-Ohio-4374.

On November 5, 2009, Pugh, through counsel, filed a timely appeal with the Supreme

Court of Ohio raising the following propositions of law:

1. Mr. Pugh's right to Due Process was violated when the trial court summarily denied his motion to withdraw his guilty plea and the court of appeals affirmed by concluding that Mr. Pugh's grounds for showing manifest injustice could not include that the was innocent.

2. Mr. Pugh's right to Due Process was violated when the trial court summarily denied his motion to withdraw his guilty plea without an evidentiary hearing and the court of appeals affirmed the lack of hearing on the finding that the state witnesses were "interested parties."

(ECF No. 6-3, Exh. 49.)

On February 10, 2010, the appeal was dismissed as not involving any substantial

constitutional question.  (ECF No. 603, Exh. 50.)

**F.    Federal Habeas Petition**

On July 28, 2010, Pugh filed a Petition for Writ of Habeas Corpus and asserted the

following ground for relief:

> GROUND ONE: The Ohio Courts entered decisions that were contrary to, or
> unreasonable applications of, *Machibroda v. United States*, *Bousley v. United
> States*, *Murray v. Carrier* and their progeny by ruling that Mr. Pugh could not
> collaterally challenge the voluntariness of his guilty pleas in part based upon
> actual innocence.
>
> Supporting Facts: Mr. Pugh pleaded guilty involuntarily and under duress, as he
> was innocent of the offenses.  But in light of the false claims of his then-wife, the
> (false) reports he was hearing that the alleged victim (his daughter) was claiming
> the offenses occurred, concerned that a jury would believe the false claims, and
> hearing from his attorney that going to trial and losing would result in a sentence
> of 99 years, he succumbed to the pressure from his attorney and pleaded guilty.
> Only years later, in the summer of 2008, did the now-ex-wife admit that she had
> no grounds for making the claims, that notes in her diary related to the sexual
> abuse that she suffered as a child (and not about Mr. Pugh and their daughter).
> Only in 2008 did the daughter come to learn for the first time why her father was
> in jail and made clear that the offenses did not occur.

(ECF No. 1.)

### III.  Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of
> an application for a writ of habeas corpus by a person in custody
> pursuant to the judgment of a State court.  The limitation period
> shall run from the latest of–
>
> > (A) the date on which the judgment became final by the
> > conclusion of direct review or the expiration of the time for
> > seeking such review;
> >
> > (B) the date on which the impediment to filing an application

> created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

## A.    One-Year Limitation

In the instant action, Respondent asserts that Pugh's petition is time-barred because he did not file within the one-year limitations period, which began running on July 14, 1998, thirty (30) days after sentencing when the deadline to file a timely  notice of appeal expired.

The AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Carey v. Saffold*, 536 U.S. 214 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003).  "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law."  *Id.*

Only "properly filed" applications for postconviction relief or collateral review toll the statute of limitations, and "a state postconviction petition rejected by the state court as untimely is not

-11-

'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S. Ct. 2, 3 (2007); *Pace v. DiGuglielmo,* 544 U.S. 408, 125 S.Ct. 1807 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely")*; Monroe v. Jackson*, 2009 WL 73905, *2, Case No. 2:08cv1168 (S.D. Ohio Jan. 8, 2009).  A timely filed state post-conviction matter, however, cannot serve to toll a statute of limitations which has already expired before the motion was filed.  *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).  Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman*, 346 F.3d at 602 (citation omitted). Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling.  *See Monroe* at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007).

Here, Pugh had until July 14, 1999, to file a timely habeas petition without the benefit of statutory tolling.  Pugh did not file any applications for post-conviction or other collateral review until August 18, 1999 – one month after the statute of limitations expired.  As such, none of Pugh's many filings tolled the statute of limitations, as it had already expired.

Therefore, unless equitable tolling is appropriate or Pugh is entitled to begin calculating the statute of limitations from an alternative date, his petition should be dismissed as time-barred.

**B.  Factual Predicate**

Pursuant to 28 U.S.C. § 2244(d)(1)(D), the statute of limitations may commence later than the date when a petitioner's conviction became final if "the factual predicate of the claim or claims

-12-

presented" was not discovered by a petitioner, acting with due diligence, until a later date.  Pugh

argues that he could not have discovered the factual predicate of his claims until May of 2008,

rendering his petition timely.  (ECF No. 7 at 5-7.)  Specifically, Pugh avers that the notarized

statements and affidavits were not made until the summer of 2008, and he could not be certain that

a factual basis existed prior to having them in hand.  *Id.*

      Pugh's argument that this Court should choose a later date on which to start the running of

the statute of limitations is not well taken.  Since Pugh's conviction stems from his guilty plea

rather than from a conviction obtained after trial, he may only challenge whether his guilty plea

was knowing, intelligent, and voluntary.  "It is well settled that a voluntary and intelligent plea of

guilty made by an accused person, who has been advised by competent counsel, may not be

collaterally attacked."  *Bousley v. United States*, 523 U.S. 614, 621 (1998) (*quoting Mabry v.

Johnson*, 467 U.S. 504, 508 (1984)).[3]  Pugh appears to concede this point in his petition, but

correctly emphasizes that *involuntary* pleas are subject to collateral challenges.  *See, e.g.,

Machibroda v United States*, 368 U.S. 487, 493 (1962) (observing that a guilty plea induced by

false threats or promises is subject to a collateral attack); *Murray v. Carrier*, 477 U.S. 478, 496

(1986) (noting that a constitutional violation resulting in the conviction of one who is actually

_____

[3] Furthermore, "the voluntariness and intelligence of a guilty plea can be attacked on
collateral review only if first challenged on direct review."  *Bousley*, 523 U.S. at 621.
"[T]he concern with finality served by the limitation on collateral attack has special force
with respect to convictions based on guilty pleas."  *Id.* (*quoting United States v.
Timmreck*, 441 U.S. 780, 784 (1979)).  By failing to challenge the validity of a guilty
plea on direct appeal, a petitioner procedurally defaults a claim of a defective guilty plea.
*Id.* (finding that petitioner, who only challenged his sentence on direct appeal,
procedurally defaulted on a challenge to the validity of his guilty plea).  Pugh never
challenged the validity of his guilty plea on direct appeal and his claim is arguably
procedurally defaulted.  Nonetheless, as Respondent has not raised this issue, the Court
will not base its recommendation on this fact.

-13-

innocent may excuse a procedural default even without a showing of cause). Thus there appears to be no dispute that the only attack Pugh can raise against his plea is whether it was knowing, intelligent, and voluntary.

Pugh's mere assertion that his plea was involuntary does not render it so. Moreover, the merits of Pugh's petition may not be considered before the Court determines whether it was timely filed. More specifically, the question is whether the factual predicate of his claim – that his plea was involuntary because he was actually innocent – would have been known to Pugh prior to 2008.[4] This issue has been recently addressed by another district court in the Sixth Circuit. This Court finds the decision of Eastern District of Michigan to be well-reasoned and persuasive:

> Petitioner first claims he was denied due process because the trial court denied his motions to withdraw his no contest plea despite newly discovered exculpatory evidence and refused to view this evidence. He maintains that newly discovered evidence proves his innocence and that, in the interest of justice and because it would not prejudice the prosecution, he should have been allowed to withdraw his plea. This claim provides no basis for habeas relief.
>
> ***
>
> Nor does petitioner's assertion of innocence after the plea was entered render his otherwise valid plea involuntary. As another court observed long ago, there are "no cases which hold that denial of guilt, under oath, subsequent to the entry of a guilty plea but prior to sentencing renders the plea involuntary as a matter of constitutional law." *Hansen v. Mathews*, 296 F. Supp. 1328, 1331 (E.D. Wis. 1969), aff'd 424 F.2d 1205 (7th Cir. 1970). Although *Hansen* was decided over forty years ago, this observation holds true today. It is well established that "factual guilt or innocence. . . is irrelevant to the question of whether [a defendant's] plea was voluntary." *United States ex rel. Smith v. Johnson*, 403 F. Supp. 1381, 1397 (E.D. Pa. 1975), aff'd, 538 F.2d 322 (3rd Cir. 1976); *see also, Stewart v. Peters*, 958 F.2d 1379, 1385 (7th Cir. 1992) ("A guilty plea is no more involuntary because the defendant believes he is innocent than the settlement of a civil lawsuit is

---

[4] While Pugh's sole ground for relief is not the issue presently before the Court, the resolution of certain legal issues herein may also be dispositive as to the underlying merits of Pugh's claim.

-14-

involuntary because the defendant refuses to admit liability and may believe in all sincerity that he is not liable in the least.")  Indeed, the Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime.  *See North Carolina v. Alford*, 400 U.S. 25, 37-38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).  This is directly applicable to the petitioner's request for habeas relief.  The newly discovered evidence does not invalidate his valid and voluntary plea of no contest to the charges against him. ***  The plea bargain offered by the prosecution reduced or eliminated many of the original counts petitioner was charged with.  His acceptance of the plea bargain was a strategic decision and, by entering into it, he relinquished his right of going to trial and using this evidence to convince a jury of his innocence.

***

Petitioner cannot show a denial of his constitutional rights by the trial court's refusal to allow him to withdraw his plea.  Federal habeas courts have no authority to interfere in the trial process.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  A criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea.  *See Chene v. Abramajtys*, No. 95-1491, 1996 U.S. App. LEXIS 3479, 1996 WL 34902, at *2 (6th Cir. Jan. 29, 1996); *Metcalf v. Bock*, No. 00-10361-BC, 2002 U.S. Dist. LEXIS 23564, 2002 WL 317 49157, at *5 (E.D. Mich. Dec. 5, 2002) (Lawson, J.); *Freeman v. Muncy*, 748 F. Supp. 423, 429 (E.D. Va. 1990); *Williams v. Smith*, 454 F. Supp. 692, 696 (W.D.N.Y. 1978), aff'd, 591 F.2d 169 (2d Cir. 1979).  Thus, the trial court's refusal to allow petitioner to withdraw his plea under the governing state court rules does not state a cognizable basis for habeas relief.

*McClellan v. Rapelje,* 2010 U.S. Dist. LEXIS 134708, 18-23 ( E.D. Mich. Nov. 15, 2010), adopted by 2010 U.S. Dist. LEXIS 134707 ( E.D. Mich. Dec. 20, 2010).

In addition, pursuant to the AEDPA, this Court can only grant a petition for a writ of habeas corpus when a petitioner demonstrates a "violation of clearly established federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1) (1996).  The United States Supreme Court has never expressly recognized a freestanding actual innocence claim.  *See DA's Office v. Osborne*, 129 S. Ct. 2308, 2321 (2009) (Roberts, C.J.) (Whether a federal constitutional right to be released upon proof of actual innocence exists "is an open

-15-

question.  We have struggled with it over the years, in some cases assuming, *arguendo*, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet."); *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *Friedman v. Rehal*, 618 F.3d 142, 159 (2nd Cir. 2010) ("The Supreme Court has not finally resolved the issue of whether there is a federal Constitutional right to be released upon proof of actual innocence."); *Sailor v. Bradshaw*, 2006 U.S. Dist. LEXIS 97062 (N.D. Ohio Aug. 22, 2006) ("There is no clearly established law as to whether a claim of actual innocence can stand on its own.")  The *Herrera* court explained that "federal habeas cases have treated claims of 'actual innocence,' not as an independent constitutional claim, but as a basis upon which a habeas petitioner may have an independent constitutional claim considered on the merits, even though his habeas petition would otherwise be regarded as successive or abusive.  History shows that the traditional remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion, has been executive clemency."  506 U.S. 390 at 417.

Because there is no clearly established free-standing actual innocence claim or a constitutional right to withdraw a guilty plea, Pugh cannot reasonably argue that the factual predicate of the only cognizable claim he has – that his plea was not knowing intelligent and voluntary – could not have been discovered until the summer of 2008.  *See, e.g., Brady v. United States*, 397 U.S. 742, 757 (1970) ("We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case

-16-

than the defendant had thought..."); *Fortner v. Sec'y, Dep't of Corr.*, 315 Fed. Appx. 853, 855 (11th Cir. 2009) ("[D]efendants' guilty pleas foreclosed any opportunity to revisit the factual predicate upon which their convictions rested.")

Moreover, Pugh's claim that the new evidence justifies a later start date to the statute of limitations might be compelling in a case where the petitioner was convicted after a trial, as a verdict is based solely on the evidence presented at that time.  Pugh, however, has not pointed to any factual predicate that would establish that he was not properly notified of the charges against him, that he was misinformed or unaware of the elements of the charges, that he was unaware of the maximum penalties he could face, or that he was ignorant of the trial and appellate rights that he was surrendering.  A guilty plea is not based on the formal presentation of any evidence, but rather on the plea itself, which encompasses all of the factual and legal elements necessary to sustain a binding, final judgment of guilt.  *United States v. Broce*, 488 U.S. 563, 569 (1989).  As such, the facts contained in the statements and affidavits of Pugh's daughter and ex-wife, even if considered "new", do not actually have a direct bearing on whether the guilty pleas were entered knowingly, intelligently, and voluntarily.  Pugh cannot argue that he was unaware of his own innocence until he obtained these statements.  Moreover, the statements proffered by Pugh's wife and daughter are not "new" simply because Pugh believed that their testimony, at the time he accepted his guilty plea, might have been different had he opted to go to trial.  *United States v. Oakes*, 411 F. Supp. 2d 1, 4 (D. Me. 2006) ("Under the voluntary and intelligent standard, a plea of guilty is not invalid simply because the strength of the government's case may appear weaker than [defendant] thought at the time of the guilty plea.")

The statements of Pugh's daughter and ex-wife do not constitute a factual predicate that

-17-

would allow this Court to calculate the running of statute of limitations from a later date.
Therefore, unless Pugh is entitled to equitable tolling, his claim should be dismissed as time-
barred.

**C.     Equitable Tolling and Actual Innocence**

Pugh asserts that equitable tolling is appropriate because he is actually innocent.  (ECF No. 7
at 7-11.)  In order to be entitled to equitable tolling, Pugh must establish "(1) that he has been
pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."
*Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Griffin v. Rogers*, 308 F.3d 647, 653 (6th
Cir. 2002).  A court should be "much less forgiving . . . where the claimant failed to exercise due
diligence in preserving his legal rights."  *Vroman*, 346 F.3d at 605, *quoting Irwin v. Dep't of
Veterans Affairs*, 498 U.S. 89, 96 (1990); *accord Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003);
*Garrison v. Warren Corr. Inst.*, 1999 U.S. App. LEXIS 13314 (6th Cir. Jun. 10, 1999).

In *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005), it was held that "equitable tolling of the
one-year limitations period based on a credible showing of actual innocence is appropriate."  395
F.3d at 599 (following *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1998)).  In
such cases, a petitioner must "support his allegations of constitutional error with new reliable
evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical
physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 298.  The *Souter* Court
ruled that "where an otherwise time-barred habeas petitioner can demonstrate that it is more likely
than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the
petitioner should be allowed to pass through the gateway and argue the merits of his underlying
constitutional claims."  395 F.3d at 602.  This standard is consistent with "AEDPA's central

-18-

concern that the merits of concluded criminal proceedings not be revisited in the absence of a strong showing of actual innocence." *Id*. at 600.  "A petitioner may claim actual innocence for the purposes of equitable tolling, even if his conviction was the result of a plea." *Connolly v. Howes*, 304 Fed. Appx. 412, 417 (6th Cir. 2008) (*citing Bousley*, 523 U.S. at 623; *Waucaush v. United States*, 380 F.3d 251, 258 (6th Cir. 2004) (finding petitioner actually innocent of charge to which he pled guilty).  However, all of these cases are distinguishable from the case at bar.  In *Bousley* and *Waucaush*, the defendants essentially plead guilty to conduct that was later determined to be insufficient to satisfy the essential elements of the crimes.  At the time of the plea and the initial appeal, neither the defendant, his counsel, nor the court correctly understood the precise requirements necessary to prove the offenses in questions.  In *Connolly*, the petitioner entered a plea of "no contest" while expressly maintaining his innocence.  Even so, the Sixth Circuit found that the *Schlup* standard was not satisfied because the evidence supporting the petitioner's alleged innocence was not new and would have been available at trial.  304 Fed. App'x at 418.

"When considering a petitioner's assertion that he is innocent, 'the self-inculpatory statements he made under oath at his plea allocution carry a strong presumption of verity, and the court, in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant.'" *Logan v. Booker*, 2007 WL 2225887, *4 (E.D. Mich. Aug. 1, 2007) (*quoting Urena v. People of State of New York*, 160 F.Supp.2d 606, 610 (S.D.N.Y. 2001) (*quoting United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997)); *see also Everard v. United States*, 102 F.3d 763, 766 (6th Cir. 1996) (holding that the mere assertion of innocence, absent support from the record, is insufficient to overturn a guilty plea).  Pugh, in open court, stated he understood the terms of his plea agreement, that he was entering the plea of his

-19-

own free will, and that he was, in fact, guilty of the crimes.  (ECF No. 6-4, Exh 52 at 19-24.)
There is a strong presumption that Pugh's statements made at the hearing were truthful.

Moreover, the *Schlup* standard requires the presentation of "new evidence" not available at
trial.  Had Pugh not waived his trial rights, he would have been entitled to confront the witnesses
against him – including his ex-wife and daughter.  The mere fact that Pugh declined to exercise his
right to hear the testimony of his ex-wife and daughter does not render the statements made by
these individuals ten years later "new evidence."  *See, e.g., Cleveland v. Bradshaw*, 2011 U.S.
Dist. LEXIS 3708 (N.D. Ohio, Jan. 14, 2011) ("Although there is conflicting authority on this
issue, district courts in this Circuit have held that 'new' evidence means 'newly discovered'
evidence -- that is, evidence unavailable to the petitioner at the time of trial -- rather than evidence
that was simply not presented to a jury.)  In fact, it is suggested that Pugh's daughter did not know
he was in prison because of allegations he sexually molested her when she was thirteen years old.
(ECF No. 6-3, Exh. 4.)  This suggests that her testimony at the time might have been more
consistent with her recent affidavit.  What the ex-wife's testimony might have been at trial is also
subject to some speculation, as the record does not reflect any pre-plea hearings where testimony
was offered.  As there is no trial record in cases where a defendant accepts a guilty plea, the *Schlup*
standard would be difficult to apply, as the evidence would naturally be one-sided in a petitioner's
favor.  Petitioners who plead guilty could easily circumvent the statute of limitations by proffering
statements and affidavits from sympathetic witness, even complaining witnesses, who were never
subject to cross-examination.[5]  This case, after all, does not involve an interpretation of what

---

[5]  The Supreme Court's decision in *Bousley* is distinguishable from the case at bar.
Although the petitioner therein asserted his actual innocence as the basis for excusing his
procedural default, the petitioner's argument revolved around a claim that he was

legally constitutes a violation of a statute, but rather a plea where Pugh actually admitted

committing acts that were found to be a violation of a statute he does not now challenge.  This

Court is not inclined to read *Schlup* so broadly as to effectively open the floodgates to such

otherwise untimely petitions.

### III.  Conclusion

For the foregoing reasons, it is recommended that this matter be DISMISSED as time barred.

/s/ *Greg White*
U.S. Magistrate Judge

Date: July 8, 2011

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

misinformed as to the nature of the crime charged – an allegation that was found to be factually correct – and was not based on the argument that potentially exculpatory statements obtained subsequent to an otherwise valid plea rendered it involuntary.

-21-